J-S37018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF E.S.T., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.W., FATHER | : : : : : : | |
| | : | No. 683 EDA 2018 |

Appeal from the Decree Entered February 15, 2018
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2015-A0069

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 11, 2018**

J.W. ("Father") appeals from the decree terminating his parental rights to E.S.T. ("Child"). We conclude the trial court did not abuse its discretion when terminating Father's parental rights and affirm.

Child was born in January 2015 addicted to methadone, heroin and Klonopin. Child has lived with L.T. since she left the hospital in February 2015. On April 13, 2017, L.T. filed a Petition for Involuntary Termination of Parental Rights of Father.[1] On January 24, 2018, the trial court conducted a hearing on the Petition.

The trial court found the following facts:

---

*   Former Justice specially assigned to the Superior Court.

[1] That same day, Petitioner also filed a Petition to Confirm Consent of Biological Mother, which the trial court granted on February 15, 2018.

[Child] has special needs. Since her birth, she has had five specialty therapists and she continues to receive early intervention screening due to her sensory-based delays.

[Child] has a warm and loving relationship with [L.T.]. [Child] relies on [L.T.] to meet her daily needs. [Child] shares a strong bond with [L.T.], as they have lived together in the only home [Child] has ever known. Because [Child] is very secure in the stability provided by [L.T.'s] care, she is thriving and flourishing in her current home.

[Father] has never met [Child]. [Father] was incarcerated in December 2014 and he pled guilty to two misdemeanor charges on February 24, 2015. [Father] received a state sentence on June 3, 2015 that included sentencing for violating the terms of his probation on three other criminal charges. [Father] remains incarcerated at the time of the hearing, resulting from his June 3, 2015 sentencing. His maximum release date is in June 2019.

[Father] also has an 11 year old son. [Father] has been in and out of jail for the last 12 years. During the last ten years, [Father] has spent eight years in jail. Prior to his recent incarceration, [Father] was released from state custody in April 2011 into a halfway house where he remained until December 2011. Six months later, [Father] was arrested again on June 8, 2012. While serving his current sentence, [Father] has incurred several infractions in prison that derail any opportunity for early release to assume his parenting responsibilities for [Child].

During his current incarceration, [Father] did not seek the assistance of prison officials or his criminal attorneys to contact [Child]. Even though [L.T.] reached out to Paternal Grandmother as early as Fall 2015, Paternal Grandmother never relayed messages from [Father] to [Child]. Although [Father] never filed petitions seeking custody of [Child], he did write a letter inquiring about his parental status to the court and the Montgomery County, PA Office of Children and Youth, respectively.

Despite receiving funds from [L.T.'s] mother, [Father] failed to send any gifts to [Child] from June 1, 2016 to June 1, 2017. [Father] has provided no financial support for the care of [Child]. Instead, [Father] solicited funds from [L.T.'s] mother which he used to buy clothing for himself and make

phone calls from prison. For the most part, the calls made from prison were not about [Child]. [Father] never inquired about [Child's] medical condition or her school records. He did, however, send [Child] a Christmas card and a birthday card.

[Father] acknowledges that removing [Child] from her current home would be harmful and upsetting to [Child]. He has no plans for the care of [Child] upon his release from prison.

Trial Court Opinion, filed 2/15/18, at 2-4.

On February 15, 2018, the trial court granted the Petition for Involuntary Termination of Parental Rights of Father. Father filed a timely Notice of Appeal.

On appeal, Father raises the following issues:

1. Did the Honorable Trial Court commit error in terminating the parental rights of Father, pursuant to 23 Pa.C.S. § 2511(a)(1), when the testimony at trial demonstrated that Father was essentially prevented from performing his parental duties while he has been incarcerated and at no point has evidenced a settled purpose of relinquishing his parental claim nor has he failed or refused to perform parental duties[?]

2. Did the Honorable Trial Court commit error in terminating the parental rights of Father, pursuant to 23 Pa.C.S. § 2511(a)(2), when the testimony at trial demonstrated that Father has tried at all relevant times to maintain a position of importance in the child's life and is nearing the end of his prison sentence; accordingly the causes of any incapacity on the part of Father are in the process of being remedied?

3. Did the Honorable Trial Court commit error by involuntarily terminating Father's parental rights where the facts did not establish by clear and convincing evidence that such termination was in the best interests of the child as contemplated by 23 Pa.C.S. [§] 2511(B)?

Father's Br. at 2 (unnecessary capitalization omitted).

When reviewing orders terminating parental rights, we must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). Where "the factual findings are supported," we review the decision "to determine if the trial court made an error of law or abused its discretion." *Id.* (quoting *In re Adoption of S.P.*, 47 A.3d at 826). We defer "to trial courts that often have first-hand observations of the parties spanning multiple hearings," *id.*, and will reverse a decision "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will," *id.* (quoting *In re Adoption of S.P.*, 47 A.3d at 826). We will not reverse the trial court "merely because the record would support a different result." *Id.* (quoting *In re Adoption of S.P.*, 47 A.3d at 827).

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

***In re Adoption of S.P.***, 47 A.3d at 826-27 (citations omitted).

To affirm the termination of parental rights, this Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to its finding as to Section 2511(b). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Father's parental rights pursuant to Sections 2511(a)(2) and (b).

We will first review the trial court's conclusion that termination was proper under Section 2511(a)(2), which provides:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To terminate parental rights pursuant to Section 2511(a)(2), the moving party must produce clear and convincing evidence of the following: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or

refusal cannot or will not be remedied." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003). Further, the Pennsylvania Supreme Court has held that:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

***In re Adoption of S.P.***, 47 A.3d at 828.

The trial court concluded that L.T. proved by clear and convincing evidence that Father's incarceration created a repeated and continued incapacity to parent that caused Child to be without the essential parental care, control or subsistence necessary for her well-being. TCO, at 5. It noted that Father would not be released from prison for at least another year and, therefore, the conditions that created the incapacity would not be remedied. ***Id.*** at 5-6. The trial court further reasoned that, although Father testified that he would seek to remain drug and crime free after his release, "his repeated incarcerations and, consequently, his failure to parent his 11[-]year[-]old son casts considerable doubt upon his promises to attend [alcoholics anonymous or narcotics anonymous] once he is released from prison." ***Id.*** We conclude that the record supports the trial court's factual findings and it did not err or abuse its discretion when it found that termination of Father's parental rights was proper under Section 2511(a)(2).

We next address the trial court's conclusion that termination would best serve Child's developmental, physical and emotional needs and welfare under Section 2511(b). Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to Section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *Id.* at 1287. The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*.

The trial court concluded:

[Father] has not maintained sufficient and consistent contact and there is no parental bond between the child and [Father]. Since her birth, [Child] has never visited [Father]. [Father's] sporadic phone calls from prison to the household do not constitute a meaningful form of communication between [Father] and [Child].

In this case, Father has not provided a home, has not met [Child's] needs and has not maintained a consistent and strong parent-child relationship. The parent's desire to start over upon his release from prison is insufficient to meet [Child's] needs for consistent and reliable love, affection and responsibility. I conclude that the emotional needs and welfare of [Child] can best be met by termination of the parental rights of [Father], and that [Child] will not suffer a detriment as a result of termination of the parental rights of [Father].

In this case, I find that the parental bond between [Father] and [Child] does not exist. By contrast, I find that a strong bond has developed between [L.T.] and [Child].

TCO, at 7. The record supports the court's conclusions and the court did not err or abuse its discretion in concluding the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/18

- 8 -